**James D. MacMILLAN, Plaintiff,**

v.

**CITY OF ROCKY RIVER, et al., Defendants.**

No. 1:87 CV 2820.

United States District Court, N.D. Ohio, E.D.

Sept. 21, 1990.

Robert M. Winston, Cleveland, Ohio, for plaintiff.

J. William Petro, David J. Matty, Cleveland, Ohio, for defendants.

## ORDER

BATTISTI, District Judge.

Before the court is Defendants' Motion to Dismiss and/or for Summary Judgment. Also before the court is Plaintiff's Motion for Partial Summary Judgment on Counts I and III of his Complaint.

Plaintiff James D. MacMillan ("MacMillan"), an amateur radio operator, licensed by the Federal Communication Commission, brings this action against the City of Rocky River, the Building Commissioner for the City of Rocky River ("Commissioner"), in his individual and official capacities, and the members of the Board or Zoning and Building Appeals of the City of Rocky River ("Board"), individually and in their official capacities, for denying, pursuant to certain City ordinances, his application to construct a thirty foot radio antenna system at his Rocky River residence. MacMillan seeks a declaratory judgment, injunctive relief and damages, based upon alleged violations of his rights under the United States Constitution and relevant federal statutory law.[1]

---

**1.** Specifically, as an amateur radio operator, Plaintiff claims violations of his rights under the Communications Act of 1934, 47 U.S.C. § 151, *et seq.,* and the rules and regulations of

Jurisdiction in the federal district court is predicated upon these alleged violations of the United States Constitution and federal statutory law. 28 U.S.C. §§ 1331, 1337 and 1343 (1982).

## I. FACTS

On or about January 20, 1987, Plaintiff applied to the City of Rocky River for a building permit to construct a thirty (30) foot antenna system at his residence on Gibson Drive in Rocky River. On June 5, 1987, the Commissioner notified the Plaintiff in writing that his application for a building permit was denied based upon three grounds. First, the Plaintiff's proposed radio tower would exceed the maximum height allowance under section 1143.-10(b) of the Codified Ordinances of the City of Rocky River. Section 1143.10(b) states in relevant part that:

> broadcasting towers, radio ... antennae ... may be erected above the height limit for the district, subject to the following constraints:
>
> (1) The height from the base of such structure, or the uppermost point at which such structure is attached to a building, to the top of such structure shall not be greater than the horizontal distance from the base of the structure to the nearest adjoining property line.

Codified Ordinances of the City of Rocky River § 1143.10 (Ord. 59–73, Passed July 23, 1973) (1985).

In addition, the Commissioner stated that Plaintiff failed to provide certain technical information necessary to reviewing the permit application. Finally, the Commissioner stated that the proposed radio tower was not necessary for the development of Plaintiff's property and would result in a substantial impairment of neighboring real estate values, thus justifying denial of the permit pursuant to section 1333.02 of the Codified Ordinance of the City of Rocky River. Section 1333.02 states that:

the Federal Communications Commission ("FCC") promulgated thereunder, 47 C.F.R., Part 97.

**2.** § 2506.01 states that:

> Whenever application is made for a permit to construct or alter a building or structure within this City, and the Building Commissioner finds that the proposed building or structure is of such value, design, material or location that it will result in a substantial impairment or destruction of value in neighboring real estate, and if he further finds that the use of the particular design, material or location proposed, or substantially similar ones, is not reasonably essential to the development of the property proposed to be built or altered, the Building Commissioner shall refuse to issue the permit. He shall within five days notify the applicant of such refusal and the reason thereof.

Codified Ordinances of the City of Rocky River § 1333.02 (Ord. 3077, passed November 14, 1955) (1985).

Plaintiff appealed this determination to the Board. On or about August 13, 1987, the Board approved the Commissioner's decision to refuse Plaintiff's application for a building permit.

On or about August 27, 1987 Plaintiff appealed the Board's decision to the Cuyahoga County Court of Common Pleas, pursuant to Ohio Rev.Code Ann. § 2506.01 (Anderson 1981 & Supp.1989).[2] *See James D. Macmillan, et al. v. the City of Rocky River, Ohio, et al.*, Case No. 135089. On or about October 6, 1987, Plaintiff filed a Motion for Enlargement of Time with the Cuyahoga County Court of Common Pleas, requesting an extension until October 27, 1987 to file a Brief in Support of his Appeal. On or about October 27, 1987, Plaintiff filed a Motion to Stay Proceedings in that Appeal. On November 9, 1987, Defendants filed a Brief in Opposition to Plaintiff's Motion to Stay Proceedings in the Court of Common Pleas. Apparently, Plaintiff has, to date, filed no brief in support of his appeal in the court of common pleas.

> Every ... decision of any ... board ... or any political subdivision of the state may be reviewed by the common pleas court of the county in which the principal office of the political subdivision is located ...

On October 27, 1987, the same day Plaintiff filed his motion to stay proceedings in the court of common pleas, Plaintiff also filed the complaint in the instant case in federal court.

The complaint alleges six claims against the City, the Commissioner and the Board:

Count I—Sections 1331.01, 1333.02, and 1143.11(b) of the City Ordinances contravene federal law on their face and as applied to Plaintiff, thereby violating Art. VI cl. 2 of the United States Constitution.

Count II—Sections 1331.01, 1333.02, and 1143.11(b) are unconstitutional on their face and as applied, in that they unreasonably burden radio communications and interstate commerce, thereby violating Art. I § 8.

Count III—Sections 1331.01, 1333.02, and 1143.11(b) are impermissibly vague and overbroad, thereby violating the First and Fourteenth Amendments. In addition, Defendants failure to promulgate reasonable rules relating to the grant of permits deprives Plaintiff of equal protection and due process, in violation of the Fourteenth Amendment.

Count IV—Sections 1331.01, 1333.02, and 1143.11(b) are void and unconstitutional on their face and as applied insofar as they constitute an invalid exercise of state police power.

Count V—Sections 1331.01, 1333.02, and 1143.11(b) are void and unconstitutional on their face and as applied in that they deprive Plaintiff of equal protection in the exercise of his constitutional rights, guaranteed by the Fourteenth Amendment.

Count VI—Defendant Commissioner and Board members conspired to and did, under color of State law, deny plaintiff his constitutional right to a fair hearing and of his rights and privileges under the First and Fourteenth Amendments and by statute.

Plaintiff seeks declaratory and injunctive relief, as well as damages. The suit names as defendants the City of Rocky River, the Commissioner in his official and individual capacity, and the Board members in their official and individual capacities.

Defendants argue that the court should invoke the doctrine of abstention and decline to exercise jurisdiction. Alternatively, Defendants argue that Plaintiff's complaint should be dismissed in its entirety for failure to state a claim upon which relief can be granted, and/or Defendants should be awarded summary judgement as a matter of law. Defendants also argue that the Commissioner and the Board members are protected from civil liability by qualified immunity, and therefore, the complaint against them in their individual capacity should be dismissed. Finally, Defendants argue that the Board members are not proper parties to the lawsuit, and thus, the court should dismiss all claims alleged against the members of the Board in their official capacity.

Plaintiff has moved for partial summary judgement on Counts I and III.

## II. ABSTENTION

■ The court finds no reason to abstain in the instant case. Noting that "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule," *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976) and that absent "exceptional circumstances," *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 189, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959), federal courts have "the virtually unflagging obligation ... to exercise the jurisdiction given them," *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246, the Supreme Court has confined the circumstances appropriate for abstention to three general categories: (1) those that present "a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law" ("*Pullman*" abstention); (2) those that present "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar" ("*Burford*" abstention); and, (3) those in which "absent bad faith, harassment, or patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state

criminal proceedings" ("*Younger*" abstention). *Colorado River*, 424 U.S. at 815–816, 79 S.Ct. at 1245–1246.

Defendants' brief argues that this court should abstain from ruling on Plaintiff's constitutional allegations under the *Pullman* line of cases. This argument, however, demonstrates a misunderstanding of the nature of that doctrine. Defendants claim that this court should withhold judgement until the Ohio courts have an opportunity to rule on the preemptive effect of the Federal Communications Commission's Memorandum Opinion and Order In the Matter of Federal Preemption of State and Local Regulations Pertaining to Amateur Radio Facilities, 50 Fed.Reg. 38813 (adopted September 16, 1985) (hereinafter referred to as "PRB–1").

While the preemptive effect of PRB–1 will be discussed herein, it is enough to note at this time that preemption is not an unresolved question of state law of the type envisioned in the *Pullman* line of cases. Preemptive effect is, instead, a question of federal law, and thus, not a proper ground for *Pullman* abstention.

In addition, a federal court should only abstain under the *Pullman* doctrine where the state statute in question is uncertain. *Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 306, 99 S.Ct. 2301, 2313, 60 L.Ed.2d 895 (1979). In this instance, defendant has failed to indicate any way in which the relevant ordinances could be interpreted by Ohio state courts to avoid the constitutional questions raised in this action.

*Burford* abstention is also inappropriate in this case, as the state interest in local land use policy is insufficient to overcome the strong federal interest in promoting amateur radio operations. The Supreme Court stated in the *Colorado River* case that "the presence of a federal basis for jurisdiction may raise the level of justification needed for abstention." 424 U.S. at 815 n. 21, 96 S.Ct. at 1245 n. 21. In issuing PRB–1, the FCC created "a limited preemption of state and local regulations which preclude amateur communications." 50 F.Reg. 38813. PRB–1 states that:

The ruling is necessary so that amateurs and local governing bodies alike will be aware of the *strong federal interest in promoting amateur communication.* The effect of the ruling is to give local communities and amateur operators a clear statement of the federal interest in amateur communications.

*Id.* (emphasis added).

In addition, the ruling states that local ordinances "must be crafted to accommodate reasonably amateur communications" and to "represent the minimum practicable regulation to accomplish the local authority's legitimate purpose." *Id.* at 38816. In light of this clear federal interest and the presence of at least partial preemption of local ordinances, it would be inappropriate for this court to abstain.

Several other federal courts have refused to abstain in cases similar to the one at hand. In *Izzo v. Borough of River Edge*, 843 F.2d 765 (3rd Cir.1988), the plaintiff, an amateur radio operator licensed by the FCC, applied to the borough planning board for a variance to construct a forty foot transmission tower at his residence. After a hearing, the board denied the variance, and the applicant filed a complaint in district court alleging constitutional violations and an invalid exercise of the borough's police power. The court stated that while "[f]ederal courts have expressly disavowed any desire to sit as a statewide board of zoning appeals hearing challenges to actions of municipalities ..., [t]he special circumstances here require that the district court retain jurisdiction and adjudicate its dispute." *Id.* at 769. Among those "special circumstances" was that "an express, narrow, and quite specific federal provision threatens, at most, only a minimal disruption of a broad state policy." *Id.* See also *Bodony v. Incorporated Village of Sands Point*, 681 F.Supp. 1009, 1014 (E.D.N.Y.1987) (finding abstention in such cases "inappropriate").

Accordingly, abstention is not warranted in the instant case.

### III. STANDARD OF REVIEW

■ Defendants argue that this action should be dismissed pursuant to Fed.R.Civ.

Proc. 12(b)(6) for failure to state a claim upon which relief can be granted or alternatively that summary judgment should be granted. The court will treat Defendant's motion as one for summary judgment, as matters outside the pleadings are presented to and not excluded by the court. Fed. R.Civ.P. 12(b). The granting of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering the propriety of a motion for summary judgment, the court must view all facts and inferences in a light most favorable to the nonmoving party. *Securities and Exchange Commission v. Blavin*, 760 F.2d 706, 710 (6th Cir.1985).

"The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action." *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir.1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The nonmoving party, on the other hand, "is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987) (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968)). The nonmoving party must go beyond the pleadings "and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific fact showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553.

## IV. PRECLUSION

■ Plaintiff seeks summary judgement in this case on the ground that the local ordinances in question, both as written and applied, are preempted by PRB–1, and thus, may not be enforced without violating the Supremacy Clause of Article VI, clause 2 of the United States Constitution. "Federal preemption is premised on the Supremacy Clause and manifestation of Congressional intent to exclude state law." *Bulchis v. City of Edmonds*, 671 F.Supp. 1270, 1273 (W.D.Wash.1987) (citing *Chicago & North Western Transportation Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 317, 101 S.Ct. 1124, 1130, 67 L.Ed.2d 258 (1981)). As "[f]ederal regulations have no less preemptive effect than federal statutes," *Fidelity Fed. Sav. & Loan Ass'n v. De La Cuesta*, 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982), the FCC has the power to preempt local ordinances which conflict with federal policies. The FCC issued PRB–1 pursuant to its power to "make such rules and regulations, and issue such orders, not inconsistent with this chapter, as may be necessary in the execution of its functions." 47 U.S.C. § 154(i).

■ It must be noted initially that this court need not even consider the possible preemption of § 1143.11(b), as it is the court's opinion that there is no violation of that ordinance as drafted. Where a "state's highest court has not spoken to the question in controversy, the federal court must discern how the state courts would respond if confronted with the question." *Hartford Fire Ins. Co. v. Lawrence, Dykes, Goodenberger, Bower & Clancy*, 740 F.2d 1362, 1365 (6th Cir.1984). Neither party has identified any instance in which the Supreme Court of Ohio has had the opportunity to interpret § 1143.11(b). Certainly, defendant has shown no state court support for the Commissioner's interpretation of the ordinance. *See* Deposition of Kevin Beirne, at 78–83. "Under Ohio law, '[i]t is a cardinal rule that a court must first look to the language of the statute itself to determine the legislative intent.... If that inquiry reveals that the statute conveys a meaning which is clear, unequivocal and definite, at that point the interpretive effort is at an end and the statute must be applied accordingly.'" *Id.* at 1365 (citing *Provident Bank v. Wood*, 36

Ohio St.2d 101, 105–06, 304 N.E.2d 378 (1973)).

The Sixth Circuit has also stated that in the absence of state authority, federal courts must be "guided by applicable principles of state law and by relevant decisions of other jurisdictions." *Arms v. State Farm Fire & Casualty Co.*, 731 F.2d 1245 (1984). The Supreme Court of Ohio has stated:

> This court has long held that statutes imposing restrictions on the use of private property must be strictly construed.... All doubts should be resolved in favor of the free use of private property rather than in favor of restrictions on such use.
>
> *Gennari v. Andres–Tucker Funeral Home, Inc.*, 21 Ohio St.3d 102, 488 N.E.2d 174, 177 (1986).

*See also Pinnacle Woods Survival Game, Inc. v. Hambden Township Zoning Inspector*, 33 Ohio App.3d 139, 514 N.E.2d 906, 908 (1986) (stating that "[s]tatutes or ordinances which impose restrictions upon the use of private property will be strictly construed and their scope cannot be extended to include limitations not therein clearly proscribed"); and *Cicerella, Inc. v. Jerusalem Township Bd. of Zoning Appeals*, 59 Ohio App.2d 31, 392 N.E.2d 574, 577 (1978) (stating that "[i]n determining the permitted use of property under a zoning classification in which terms and language therein are not otherwise defined, the common and ordinary meaning of these terms and language must be considered, liberally construing the terms and language in favor of the permitted use so as not to extend the restrictions to any limitation of use not therein clearly prescribed").

The plain language of the § 1143.11(b) allows for two methods of measuring antenna height. An antenna may either be measured from its base to its top, or from the uppermost point at which it is attached to a building to its top. As long as either of these measurements is shorter than the distance from the base of the antenna to the nearest adjoining property line, there is no violation of the ordinance. Plaintiff's thirty foot antenna will be attached to the building at a height of twelve feet and will be between twenty-seven and thirty feet from the nearest adjoining property line. Since there is no violation of the ordinance as drafted this court need not examine the question of preemption.

■ The court now turns to the possible preemption of § 1333.02.[3] In issuing PRB–1, the FCC attempted to reach an accommodation between the federal interest in regulating amateur radio operators and the state interest in regulating land use. PRB–1 describes the conflict as follows:

> Few matters coming before us present such a clear dichotomy of viewpoint as does the instant issue. The cities, counties, local communities and housing associations see an obligation to all of their citizens and try to address their concerns. This is accomplished through regulations, ordinances or covenants oriented toward the health, safety and general welfare of those they regulate. At the opposite pole are the individual amateur operators and their support groups who are troubled by local regulations which may inhibit the use of amateur stations or, in some instances totally preclude amateur communications.

50 Fed.Reg. at 38815.

PRB–1 determines that a limited preemption policy is warranted, and states:

> Because amateur station communications are only as effective as the antennas employed, antenna height restrictions directly affect the effectiveness of amateur communications. Some amateur antenna configurations require more substantial installations than others if they are to provide the amateur operator with the communications that he/she desires to engage in.... We will not, however specify any particular height limitations below which a local government may not regulate, nor will we suggest the precise language that must be contained in local

---

**3.** The court will not consider plaintiff's challenge to § 1331.01. Since plaintiff appealed the decision of the Commissioner, he was properly before the Board regardless of the filing of a protest under § 1331.01.

ordinances, such as mechanisms for special exceptions, variances, or conditional use permits. Nevertheless, local regulations which involve placement, screening, or height of antennas based on health, safety, or aesthetic considerations must be crafted to accommodate reasonably amateur communications, and to represent the minimum practicable regulation to accomplish the local authority's legitimate purpose.

*Id.* at 38816.

The court concludes that § 1333.02 is not facially invalid since it provides a sufficient structure for balancing state and federal interests as required by PRB-1. By its terms the ordinance provides for a balancing of the effect of an improvement on neighboring property values against the reasonable need for the improvement to develop the property. As interpreted by Defendant, however, reasonable need in this situation involves reasonable need for the particular antenna to carry on effective communication of the type desired. *See* Defendant' Brief in Opposition to Plaintiff's Motion for Partial Summary Judgement, at 16. Interpreted as such, the ordinance could be applied to give reasonable consideration to both the city's local interests and Plaintiff's federally protected interest in amateur radio operation.

■ The court concludes, however, that the City of Rocky River did not apply the ordinance in such a way as to provide for the reasonable accommodation of amateur radio communications, and therefore, its ability to apply § 1333.02 as it did in this action is preempted by PRB-1.

It is only too clear from the depositions of Building Commissioner Beirne and Gordon Stofer, a member of the Board of Zoning and Building Appeals, that neither the Commissioner, nor the Board had more than a cursory understanding of PRB-1 and its requirements. Despite this, the City's actions might still be held legitimate if the decisionmaking process included a reasonable accommodation of the federal government's interest in amateur radio communications. Evidence of such an accommodation, however, is totally lacking.

The Commissioner's letter of June 5, 1987 denying Plaintiff's application for a building permit was largely conclusory. There was no indication in the letter that the Plaintiff's needs for adequate communication had been adequately considered. This combined with the Commissioner's obvious lack of understanding of radio communications at the time of his deposition indicates that concerns over property values and neighbors' protests may have predominated in the decisionmaking process.[4] The Board's verbal affirmance of the Commissioner's decision, unsupported as it is by any written opinion, fails to show any attempt to accommodate federal interests. Quite simply, there is nothing in the record to indicate that federal interests in amateur radio operation were sufficiently considered, or for that matter even adequately understood, by either the Commissioner or the Board.

Due to the court's holding on preemption, the plaintiff's second ground for summary judgement need not be considered. The only issue remaining is that of damages.

## V. DAMAGES

■ Defendant claims that due to the availability of qualified immunity all claims for damages against the Commissioner and members of the Board in their individual capacities should be dismissed. The Supreme Court of the United States has recognized that "permitting damages suits

---

4. The third ground for the Commissioner's denial of a building permit was the Plaintiff's failure to submit certain technical documents. While the City of Rocky River clearly has the right to require applicants for building permits to submit all necessary technical documents, the Plaintiff has raised the point that the Commissioner's first mention of some of these documents was in the letter denying the permit. It is somewhat unclear from the record the extent to which the Plaintiff met the statutory requirement for a permit. It is unnecessary, however, for the court to reach this point, since the Board's verbal affirmance of the Commissioner's decision was based upon the effect of the antenna on property values and the Plaintiff's need for the antenna.

against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). In light of this danger, the Court has "generally provid[ed] government officials performing discretionary functions with a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Id.* (citing *Malley v. Briggs,* 475 U.S. 335, 344–45, 106 S.Ct. 1092, 1097–98, 89 L.Ed.2d 271 (1986), for the proposition that "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law' ").

The applicability of qualified immunity turns on the "objective legal reasonableness" of the government official's action "assessed in light of the legal rules that were clearly established' at the time it was taken." *Id.* (citations omitted). "On summary judgement, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (footnote omitted).

As noted previously, the case at hand turns largely on the extent to which PRB–1 preempts enforcement of the local ordinances in question. While PRB–1 indicated that local regulations "must be crafted to accommodate reasonably amateur communications, and to represent the minimum practicable regulation," it also refused to "specify any particular height limitation below which a local government may not regulate" and declined to "suggest the precise language that must be contained in local ordinances." 50 Fed.Reg. at 38816.

In light of this vague language, the court holds that Plaintiff's rights under PRB–1 were not sufficiently clear that a reasonable government official should have known that enforcement of the ordinances in question would be violative of those rights. The conduct of the Commissioner and the members of the Board is held to be objectively reasonable, thus entitling them to qualified immunity from damages.

Plaintiff is instructed to submit a brief within twenty days of the entry of this order detailing the grounds and basis for any further claims for monetary damages. Defendant may respond within ten days thereafter.

## VI. CONCLUSION

Accordingly, Defendant's motion for summary judgement is GRANTED to the extent that §§ 1333.02 and 1143.10(b) are held to be facially valid, and the Commissioner and members of the Board are found to have qualified immunity from damages. Plaintiff's motion for summary judgement is GRANTED to the extent that the process employed by the City in denying his application to erect his antenna is declared invalid.

IT IS SO ORDERED.